FILED
2026 Jul-30 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOFOREST JOHNSON,<br>*Petitioner*,<br><br>v.<br><br>TERRY RAYBON,<br>Warden of William C. Holman Correctional Facility,<br>*Respondent*. | Case No. 2:16-cv-01945-CLM<br><br>CAPITAL CASE |

**RESPONSE TO JULY 16 ORDER AND**
**MOTION TO RECUSE JUDGE COREY L. MAZE**

Petitioner Toforest Johnson respectfully submits this filing in response to the assignment of this case to the Honorable Corey L. Maze and the Court's July 16 order directing the parties to state whether Judge Maze represented the State of Alabama in this case while serving in the Office of the Alabama Attorney General. Undersigned counsel have reviewed the state-court record in the case and do not believe that Judge Maze appeared on behalf of the State in any of the state-court proceedings. However, Johnson respectfully moves to recuse Judge Maze because the actions of the Office of the Attorney General from 2005 through 2019 are directly relevant to several of the claims in this case. The Court will be required to consider and weigh the implications of actions and misrepresentations made by attorneys

from the Office of the Attorney General, including attorneys who were Judge Maze's colleagues and co-counsel in other capital cases during the pendency of this case.

The unique role played by the Office of the Attorney General in this case further highlights the need for recusal. Both the original trial prosecutor and the Office of the Jefferson County District Attorney support a new trial for Johnson because the evidence in the case has unraveled over time. Nevertheless, the Office of the Attorney General has continued to defend Johnson's conviction and death sentence. It has done so in part by changing its positions regarding critical facts and misrepresenting the contents of its own files. Against that backdrop, it would be reasonable to question the impartiality of a judge who served in the Office of the Attorney General alongside the attorneys who engaged in that conduct and defended Johnson's conviction even when the original trial prosecutor and District Attorney disavowed it.

**Facts Relevant to Recusal**

This is a capital habeas corpus case. Johnson was convicted of capital murder and sentenced to death in Jefferson County in 1998 for the murder of Deputy Sheriff William G. Hardy. The prosecution presented no physical evidence or eyewitness testimony linking Johnson to the offense. Instead, the prosecution's case centered on the testimony of one witness, Violet Ellison, who claimed that she overheard a

telephone call in which a man said that his name was "Toforest" and that he had shot Deputy Hardy. (Doc. 36-4 at 41-96; Doc. 36-5 at 83; Doc. 36-6 at 6.)

In 2005, Johnson alleged in a Rule 32 petition that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence that Ellison was hoping to receive a reward and was later paid $5,000 for her testimony. (Doc. 36-17 at 173-74.) The State, represented by the Office of the Attorney General, denied the claim and continued to withhold evidence of any payment to Ellison. Even in 2018—13 years after Johnson raised his claim about the reward—Jon B. Hayden, an attorney in the Office of the Attorney General, stated in open court that the State's file contained "[n]othing about anyone applying for a reward or being granted a reward." (Doc. 36-63 at 40.) But the following year, after a retired state employee informed Johnson's counsel that the State maintained a confidential reward file, the Office of the Attorney General finally disclosed—for the first time—its file regarding a payment to Ellison. (Doc. 36-60 at 66-81.) The file contained a copy of a $5,000 check from the State to Ellison, along with documents explaining that Ellison received the payment because she had provided information "pursuant to the public offer of a reward." (Doc. 36-60 at 73-75.)

Once the reward payment surfaced, the Office of the Attorney General changed its story. Having previously denied the existence of the payment, Hayden then claimed that even though the State *had* paid Ellison $5,000, the payment was

insignificant. Hayden argued that Ellison did not know about the reward offer until after Johnson's trial, so nothing about the secret, concealed-for-years payment should be considered *Brady* evidence. (Doc. 36-61 at 142.) Hayden also offered testimony from Ellison that directly contradicted his own explanation for how the reward payment came about—a striking discrepancy given that the State itself made the payment.[1] J. Clayton Crenshaw, another attorney from the Office of the Attorney General, added a separate argument—that Johnson should have discovered the State's reward documents years earlier, even though Hayden had explicitly denied the existence of the documents in open court. (Doc. 36-66 at 111.) The Office of the Attorney General made no effort to reconcile its contradictory explanations about the reward payment. (*See* Doc. 44 at 33-36.) However, the state courts ultimately accepted the State's position and denied Johnson's *Brady* claim. *Johnson v. State*, 379 So. 3d 994, 1065-79 (Ala. Crim. App. 2022).

In this habeas proceeding, Johnson contends that the state courts' denial of his *Brady* claim was unreasonable under 28 U.S.C. § 2254(d), in part because the state

---

[1] Hayden represented to the state court that *Ellison contacted the district attorney's office* to seek the reward payment. (Doc. 36-60 at 166.) However, he then presented testimony from Ellison that *the district attorney's office contacted her* and told her to come in, sign some papers, and get $5,000. (Doc. 36-61 at 4-5.) The fact that the State and Ellison provided entirely different accounts as to how the reward payment came about undermines the claim that Ellison was unaware of the reward offer when she testified. (*See* Doc. 44 at 35-36.)

courts failed to account for the misrepresentations and inconsistent statements made by the Office of the Attorney General. As Johnson has argued in a brief to this Court:

> The state court's decision is particularly unreasonable in light of the State's own conduct over the course of the case, which Respondent declines to address. If there were nothing problematic about the State's $5,000 payment to Ellison, there would have been no reason for the State to conceal the payment for 18 years. Yet the State did exactly that—it paid Ellison without informing Johnson or his counsel, and it then prevented Johnson from obtaining information about the payment from 2001 to 2019. Even when Johnson raised his *Brady* claim regarding Ellison and the reward, the State denied the allegations and continued to conceal the fact that the payment had been made. (Doc. 36-16 at 49.) If not for a retired state employee informing Johnson's counsel in 2018 that the State maintained a confidential reward file, Johnson never would have obtained the documents about the payment.

(Doc. 44 at 33; *see also* Doc. 44 at 35.)[2]

The attorneys from the Office of the Attorney General who made the relevant statements on the *Brady* issue—particularly Hayden, who served as counsel for the State in this case from 2007 through 2023—worked closely with Judge Maze at the Office of the Attorney General. Specifically, Hayden and Judge Maze co-counseled other capital cases while Hayden was representing the State in this case. As co-counsel, they represented the State in Rule 32 cases involving *Brady* issues, *see*, *e.g.*, *Hunt v. State*, 940 So. 2d 1041, 1058 (Ala. Crim. App. 2005), as well as Rule 32

[2] Johnson also contends in a separate claim that the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by presenting false evidence. Many of the facts and arguments relevant to the *Brady* claim are relevant to the *Napue* claim as well. (*See* Doc. 44 at 39-42.)

cases involving substantial claims of innocence, *see*, *e.g.*, *Hinton v. State*, 172 So. 3d 338 (Ala. Crim. App. 2008). In fact, some of the arguments that the Office of the Attorney General made in this case are substantively identical to the arguments that Hayden and Judge Maze made and defended in other Rule 32 cases involving *Brady* issues. *Compare Hunt*, 940 So. 2d at 1058, *with* (Doc. 36-21 at 43-47) (pursuing and defending summary dismissal based on the argument that petitioners were required to plead *Brady* claims under Rule 32.1(e) of the Alabama Rules of Criminal Procedure).[3]

In 2020, the Office of the Jefferson County District Attorney conducted a conviction-integrity review of Johnson's case. At the conclusion of the review, both the original trial prosecutor and the District Attorney declared their support for a new trial. The District Attorney stated: "The evidence in this case has unraveled over 20 years. It has not been possible, until recently, to fully appreciate the full extent to which the foundation of this conviction has disintegrated. . . . A thorough review and investigation of the entire case leaves no confidence in the integrity of Johnson's conviction." Supplemental Amicus Curiae Brief in Support of Petitioner at 5-6, *State*

---

[3] Crenshaw, who argued on behalf of the State that Johnson should have discovered the State's reward documents earlier even though Hayden had explicitly denied the existence of the documents, had co-counseled capital cases with Judge Maze as well. *See*, *e.g.*, *Magwood v. Patterson*, 561 U.S. 320 (2009); *Maples v. Campbell*, No. 5:03-CV-2399-SLB-PWG, 2008 WL 11425390 (N.D. Ala. July 3, 2008). As a judicial nominee in 2018, Judge Maze listed *Magwood*, which he co-counseled with Crenshaw and others, as one of the ten most significant litigation matters he personally handled in his career as an attorney. U.S. Senate Committee on the Judiciary, Corey L. Maze Questionnaire at 28 (2018).

*v. Johnson*, No. CC-1996-386.61 (Jefferson Cty. Cir. Ct. May 20, 2024). In response, the Office of the Attorney General has criticized the District Attorney for reviewing the case and continued to defend Johnson's conviction and death sentence. Answer to Successive Petition at 5, *State v. Johnson*, No. CC-1996-386.61 (Jefferson Cty. Cir. Ct. Jan. 9, 2025).

## **Argument for Recusal**

Under 28 U.S.C. § 455(a), a judge should recuse himself if his "impartiality might reasonably be questioned." § 455(a); *see also* Canon 3C(1), Code of Conduct for U.S. Judges (same principle). The standard is objective. It requires a judge to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). In the context of that standard, "any doubts must be resolved in favor of recusal." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003); *see also Townsend v. Aptar, Inc.*, No. 24-12130, 2025 WL 325561 at *3 (11th Cir. Jan. 29, 2025) (same).

The standard for recusal is satisfied here given the unique circumstances of this case. Johnson's argument on the *Brady* issue involves the actions of attorneys from the Office of the Attorney General, and Judge Maze was working alongside those very attorneys, in that same office, while the attorneys were engaged in some

of the actions at issue. More specifically, Johnson has argued in his pleadings that this Court should consider the fact that Hayden and other State attorneys suppressed the existence of the $5,000 payment to Ellison for years—even after Johnson raised his *Brady* claim in 2005—which casts doubt on their later contentions that the payment was insignificant or could have been discovered earlier. (Doc. 44 at 33-36.) Importantly for purposes of recusal, while the continuing suppression of the reward payment was happening, Hayden and Judge Maze were working together in the same office and co-counseling other capital cases, including cases involving *Brady* claims. Any reasonable observer viewing those facts would question whether Judge Maze is an appropriate judge to consider and weigh the actions of his former colleagues and former office.[4] The Eleventh Circuit has required recusal in cases where the reasons to question a judge's impartiality were far less obvious than the reasons presented here. *See*, *e.g.*, *Parker*, 855 F.2d at 1524 (finding a violation of § 455(a) where the judge's law clerk was heavily involved in the case even though the clerk had a close familial relationship with an attorney whose firm represented a party).

[4] Johnson has been advancing the arguments noted above since long before this case was assigned to Judge Maze. *See*, *e.g.* (Doc. 44 at 33) (arguing in 2024 that "[t]he state court's decision is particularly unreasonable in light of the State's own conduct over the course of the case"); (Doc. 36-66 at 19) (arguing in 2023 that it was significant that the State "went to extraordinary lengths to conceal its $5,000 payment to Ellison" throughout the Rule 32 proceedings).

The divergent views of the Office of the Attorney General and the office that prosecuted Johnson in the first place provide further support for recusal. This is not a run-of-the-mill case in which the Office of the Attorney General is defending a conviction obtained and supported by local prosecutors. Instead, the Office of the Attorney General is defending a conviction that the District Attorney has concluded is "fundamentally unreliable" and that the trial prosecutor, who "knew the case better than anyone else," believes should be overturned. Supplemental Amicus Curiae Brief in Support of Petitioner at 2, 5, *State v. Johnson*, No. CC-1996-386.61 (Jefferson Cty. Cir. Ct. May 20, 2024). Under these extraordinary circumstances, an objective observer would question the impartiality of a judge who served in the Office of the Attorney General while this case was pending and worked alongside the attorneys who have continued to defend Johnson's conviction. The need for recusal is particularly clear since judges "must err on the side of recusal." *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001); *see also Parker*, 855 F.2d at 1524 (recognizing that "when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification").

Judge Maze's statements as a judicial nominee confirm that recusal is appropriate. In his written questionnaire for the Senate Judiciary Committee, Judge Maze stated, "For a period of time, I anticipate recusing in all cases where the Office of the Alabama Attorney General represents a party." U.S. Senate Committee on the

Judiciary, Corey L. Maze Questionnaire at 32 (2018). That statement reflects the importance of "avoiding even the appearance of impropriety where possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). It suggests that, for a period of time, even in cases involving attorneys who did not work with Judge Maze directly and even in cases presenting issues with which Judge Maze had no involvement during his time in the Office of the Attorney General, recusal would nevertheless be appropriate because an objective observer would question the impartiality of a judge presiding over a case involving the office he recently departed. While it is true that this concern would dissipate over time, nothing about the passage of time has made recusal any less important in this case. If there is an appearance of impropriety when a judge presides over a case involving the office from which he recently departed—no matter the issues presented and no matter the identity of the attorneys involved—certainly there is an appearance of impropriety where the judge is called upon to consider the actions of former colleagues with whom he co-counseled similar cases while working in that office.

To be clear, nothing in this motion is intended to cast any doubt on Judge Maze's commitment to serving as an impartial judge or his ability to serve as an impartial judge in any other case. Instead, this motion is limited to the unique circumstances of this case, which establish that recusal is necessary to comply with § 455(a) and to protect Johnson's constitutional right to due process under the

Fourteenth Amendment to the United States Constitution. *See Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (recognizing that due process requires recusal where, under an objective standard, the likelihood of bias is "too high to be constitutionally tolerable").

For these reasons and any others that may appear to the Court, Johnson respectfully requests that Judge Maze recuse from this case and refrain from taking any further action regarding it. To the extent that there is any question as to whether recusal is warranted, Johnson respectfully requests an opportunity to address the issue further at a hearing before the Court.

Respectfully submitted,

/s/ Patrick Mulvaney
Patrick Mulvaney
Southern Center for Human Rights
60 Walton Street, NW
Atlanta, GA 30303
Tel: (404) 688-1202
Fax: (404) 688-9440
pmulvaney@schr.org

/s/ Ty Alper
Ty Alper
U.C. Berkeley School of Law
Berkeley, CA 94720-7200
Tel: (510) 643-7849
Fax: (510) 643-4625
talper@law.berkeley.edu

*Counsel for Toforest Johnson*

## Certificate of Service

I hereby certify that on July 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which notify the following counsel of record: **Lauren A. Simpson**.

/s/ Patrick Mulvaney
Patrick Mulvaney
Southern Center for Human Rights
60 Walton Street, NW
Atlanta, GA 30303
Tel: (404) 688-1202
Fax: (404) 688-9440
pmulvaney@schr.org