FILED
2026 Aug-21 AM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**TOFOREST JOHNSON,**
*Petitioner*,

**v.**

**TERRY RAYBON,**
Warden, William C. Holman Correctional Facility,
*Respondent*.

**Case No. 2:16-cv-1945-CLM**

# ORDER

I was randomly assigned this case after Judge Proctor retired. (Doc. 48). Petitioner Toforest Johnson moves for my recusal. (Doc. 53). For the reason explained below, the court **GRANTS** the motion under 28 U.S.C. § 455(a).

—

Johnson's motion stems from an alleged *Brady* violation that involves a former colleague at the Office of the Attorney General of Alabama. So I start by explaining the allegation.

## A. Case Background

1. *State proceedings*: Johnson was convicted of capital murder in 1998 in the Circuit Court of Jefferson County. Three years later, the District Attorney's office successfully obtained a court order that allowed it to pay a key trial witness, Violet Ellison, $5,000 for her assistance out of a $10,000 reward offered by the Governor in 1995.

Johnson discovered the $5,000 payment in time to include it in his 2003 state post-conviction ("Rule 32") petition. In his Rule 32 petition, Johnson alleged that prosecutors knew that Ellison offered to testify at trial to collect the reward money, and that prosecutors failed to tell Johnson's attorneys about Ellison's financial motivation before trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 36-17, p. 173). Johnson alleged that both Ellison and prosecutors were involved in the cover-up, because (a) Ellison "waited until August 2001, when Mr. Johnson's conviction was affirmed on direct appeal,

before filing a formal application for the reward" (*id.*, pp. 173-74), and (b) prosecutors filed the motion to release the reward *ex parte*, thus ensuring that no record of the payment would appear in Johnson's court file. (*Id.*). According to Johnson, the prosecutors' post-trial actions "constitute[d] proof of [Ellison's] initial motivation for coming forward[.]" (*Id.*, p. 174).

Attorneys from the Capital Litigation Division of the Attorney General's Office have represented the State since direct appeal, with Assistant Attorney General Jon Hayden handling the Rule 32 proceeding. Johnson alleges that Hayden failed to produce documentary evidence of the $5,000 payment from 2003 to 2019, while generally denying the payment allegation and arguing that it was procedurally barred. (Doc. 36-16, p. 49). During a 2018 hearing, Hayden told the trial court that the DA's file had "a few documents concerning the reward," particularly the Governor's proclamation that created the reward and requests that the Governor create the reward. (Doc. 36-63, p. 40). Hayden said he had also seen an order that showed Ellison "wasn't paid the whole thing." (*Id.*, p. 41). But, to that point, Hayden had seen nothing in the DA's file "about anyone applying for a reward or being granted a reward." (*Id.*, p. 40).

In response, Johnson's attorneys told the court that an office manager from the DA's office told them that a "separate file at the DA's office for rewards" was "in a locked cabinet in the elected DA's office," and that file contained "all the reward documents . . . that Mr. Hayden said he didn't see in the case file." (*Id.*, p. 42). Hayden agreed to call the current DA to ask about the file, and the trial court agreed to call the City Law Department. (*Id.*, p. 44-45, 57, 64). Hayden later produced two batches of rewards-related documents; the first contained the documents he mentioned at the hearing and the second contained a copy of the $5,000 payment and related correspondence. (Doc. 36-60, pp. 58-82). In an email to Johnson's attorneys about the second batch, Hayden said that "I was informed these documents were not initially turn[ed] over because they were misfiled." (*Id.* at 65).

The trial court held an evidentiary hearing limited to the *Brady* claim. Johnson presented documentary evidence that showed the DA's Office paid Ellison $5,000 in 2001. The State called Ellison, who testified that she did not know about the reward until she was called by someone at the DA's office in 2001. *See* (doc. 36-62, p. 49) (state court's order denying Rule 32 petition). The

trial court then asked the parties to present testimony from the trial prosecutors and investigators about their knowledge of Ellison's motivation to come forward, and both sides objected. (Doc. 36-61, pp. 159-63). So the court did not hear from anyone who could rebut or confirm Ellison's testimony.

Finding Ellison's testimony credible and not contradicted by Johnson's documentary evidence, the trial court found as a matter of fact that Ellison did not know about the reward before or during the trial. (Doc. 36-62, pp. 52-54). The court thus held as a matter of law that Johnson failed to prove a *Brady* violation because Johnson failed to prove that prosecutors knew but withheld Ellison's financial motivation before trial. (*Id*., p. 54).

The Alabama Court of Criminal Appeals affirmed. As for the trial court's factfinding, the appellate court found that Johnson failed to show that the trial court's finding that Ellison did not know about the reward before trial was "clearly contrary to the evidence." (Doc. 36-56, p. 66). The appellate court thus affirmed the legal conclusion that, because "the State could not have known that Ellison knew about or hoped to get a reward … Johnson is due no relief on his *Brady* claim." (Doc. 36-56, p. 67) (citing *Gavin v. State*, 891 So. 2d 907, 986 (Ala. Crim. App. 2003) ("The State cannot suppress evidence that does not exist.")). As for Hayden's actions, the appellate court did not address the late production of the reward documents and affirmed the trial court's decision not to consider any inconsistency between Hayden's pre-hearing summary of the State's position and Ellison's testimony because "the statements of counsel are not evidence in this case." (Doc. 36-53, p. 65).

The state supreme court denied cert, making the Alabama Court of Criminal Appeals' *Brady* decision the operative state court decision.

2. *Federal habeas petition*: To avoid a statute of limitation issue, Johnson filed this § 2254 habeas petition in 2016, while his Rule 32 proceedings were ongoing. (Doc. 1). In the amended petition, Johnson argues that the Alabama Court of Criminal Appeals based its affirmance of the trial court's order on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), and an unreasonable application of *Brady* under 28 U.S.C. § 2254(d)(1). (Doc. 37, p. 28) (amended petition). Johnson argues that either finding of 'unreasonableness' would allow the court to find a *Brady* violation under de

novo review. (*Id.*, pp. 36-38).

When filed, the case was randomly assigned to Judge Proctor, who at the parties' request (doc. 13), stayed the case pending resolution of the state court proceedings. (Doc. 14). After the state proceedings ended, Judge Proctor re-opened the case; Johnson amended his petition (doc. 37); and filed a brief in support of the petition (doc. 44). In that brief, Johnson argued that the "state court's decision is particularly unreasonable in light of the State's own conduct over the course of the case"—pointing particularly at (a) Hayden's failure to produce the rewards documents until 2019, and (b) the alleged contradiction between Hayden's opening statement at the hearing and Ellison's testimony. (Doc. 44, pp. 33-35).[1] Johnson concluded his § 2254(d)(2) argument:

> When everything in the record is considered together—the legal context surrounding the payment to Ellison, the State's concealment of the payment for 18 years, and the conflicting stories about how the payment came about—the state court's conclusion "blinks reality." *Miller El v. Dretke*, 545 U.S. at 266. The determination that Ellison had no knowledge of the reward at the time of Johnson's trial constitutes an unreasonable determination of the facts and warrants no deference under § 2254(d)(2).

(*Id.*, p. 36).

3. *Case re-assignment & recusal*: Judge Proctor retired after Johnson amended his petition and filed his supporting brief, and the Clerk randomly reassigned the case to me. (Doc. 48).

I worked at the Attorney General's Office in the Capital Litigation Division from 2005 to 2009, then as Solicitor General from 2009 to 2011. I had no recollection of Johnson's case, either from my time working for the Attorney General or since taking the bench. But in an abundance of caution, I ordered

[1] Hayden said this during his opening: "A few years later, she had a conversation with someone who mentioned the reward. And I'm not going to get into that conversation. I don't want to get into hearsay before the Court. But after that conversation, she made an inquiry to the district attorney's office. And she made an application. And this was in August of 2001, three full years after she testified." (Doc. 36-60, pp. 165-66). Ellison testified that she "didn't know anything about a reward until approximately three years later . . . when I got a call from the district attorney's office." (Doc. 36-61, pp. 4-5). Ellison later said, "they called me, they just said I needed to come in and sign some release forms." (*Id.*, p. 9).

the parties to review the state court records to make sure that I had not appeared for the State in any capacity, at any time. (Doc. 51). The State's review showed that I had not appeared in this case (doc. 52, p. 1), nor was the case in a posture that I would have reviewed briefing during my time as Solicitor General (*id.*, p. 2).

Johnson agrees that I was not involved in the case but argues that I still must recuse under 28 U.S.C. § 455(a) because "while the continuing suppression of the reward payment was happening, Hayden and Judge Maze were working together in the same office and co-counseling other capital cases, including cases involving *Brady* claims." (Doc. 53, p. 8). Johnson continues, "Any reasonable observer viewing those facts would question whether Judge Maze is an appropriate judge to consider and weigh the actions of his former colleagues and former office." (*Id.*). The State argues that Johnson fails to present facts that mandate recusal but says it "will not contest recusal" if I believe I cannot be impartial because of my association with State attorneys in other cases. (Doc. 55, p. 2)

**B. Discussion**

While I knew nothing of this case before it was re-assigned to me, and I would judge it impartially, my belief is irrelevant. I look solely to whether recusal is required by 28 U.S.C. § 455.[2] That statute provides in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (2) Where in private practice he served as lawyer in the matter

[2] Recusal would also be required under 28 U.S.C. § 144 if Johnson had filed an affidavit that sufficiently established my bias or prejudice. But Johnson has not filed an affidavit and does not seek recusal under § 144. He relies solely on my self-enforced obligation under § 455.

> in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>
> (ii) Is acting as a lawyer in the proceeding;
>
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(a) and (b). As you can see, there are two mandatory provisions. The second, § 455(b), lists specific circumstances that warrant recusal. Johnson does not allege that any of these circumstances are present, nor are any. So Johnson's recusal motion boils down to whether my "impartiality might be reasonably questioned" by others. If it might, I must recuse. If not, then Canon 3A(2) of Judges' Code of Conduct dictates that I fulfill my assignment: "A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings."

Properly framed, Johnson's petition and supporting brief present two gateway questions under AEDPA:

1. Did the state court's failure to consider the actions of Assistant Attorneys General from 2003 to 2019 lead to an unreasonable factfinding that Ellison did not know about the reward before she testified at trial in 1998?

2. Was the state court's refusal to consider the actions of Assistant Attorneys General from 2003 to 2019 as "not evidence in this case" an unreasonable application of *Brady* and its progeny?

Each judge in this district could answer these threshold questions impartially; "the problem, however, is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 864-65 (1988). I have no doubt that if I were to rule that the state courts reasonably determined that the actions and arguments of the Assistant Attorneys General were not relevant to Johnson's *Brady* claim, some in the public would question whether I reached that decision to shield my former colleagues. Put another way, the public's confidence in the judiciary would be greater if a judge who did not work alongside the Assistant Attorneys General decided this case.

Because I must err of the side of recusal, *Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001), I find that recusal is mandated by 28 U.S.C. § 255(a).

—

My decision is limited to the unique facts of this case. Two stand out. First, unlike most recusal motions that focus on the case's facts, Johnson presents a question about the attorneys' conduct, attorneys I worked with. Second, Johnson argued about the relevance of Hayden's actions before my assignment, thus alleviating concerns about 'judge shopping.'

Without more, my government service is not a valid reason to seek my recusal in cases that involve my former office or criminal matters in general. *See* 28 U.S.C. § 455(b)(3); Canon 3C(1)(e), Code of Conduct for United States Judges. So I will continue to handle all assigned matters under Canon 3A(2).

## CONCLUSION

For these reasons, I **GRANT** Johnson's motion for recusal (doc. 53) and **DIRECT** the Clerk of Court to randomly assign this case to another judge within the district.

**DONE** and **ORDERED** on August 20, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE